## THE MICHIGAN.

### NEALLEY et al. v. THE MICHIGAN.

#### (District Court, D. Maryland. March 10, 1894.)

1. COLLISION—STEAM AND SAIL IN FOG—BURDEN OF PROOF.
   Where the steamer's witnesses testify that they were watchful and vigilant, but heard no fog signals from the sailing vessel, and there is nothing in their appearance or testimony to cause the court to hesitate in accepting their statements, the burden is then upon the sailing vessel to show by evidence which is satisfactory and convincing, and not consistent with any theory opposed to her contention, that the fog horn was properly sounded, and that, if not heard on the steamer, it was because of inattention.

2. SAME—"MODERATE SPEED."
   The requirement of moderate speed by steamers in a fog is sufficiently met by half speed, when that is but five or six knots an hour, and such that the steamer was actually able, by reversing, to nearly stop in a distance of about two lengths.

3. SAME.
   "Moderate speed" is that rate which will permit a steamer to stop, after hearing a fog signal, in time to avoid the vessel which has complied with the law in giving it.

4. SAME—FOG SIGNALS.
   In a case of collision between a steamer and a schooner, held, on the evidence, that the schooner was in fault for failure to sound fog signals, apparently assuming that the fog was not so dense as to obscure her lights.

For opinion on appeal, see 63 Fed. 280.

Carver & Blodgett and Robert N. Smith, for libelants.

I. Wilson Leakin, for respondent.

MORRIS, District Judge.   This is a libel by the owners of the four-masted schooner John Holland against the steamship Michigan to recover the value of the schooner and her cargo, consisting of 1,700 tons of coal, which was sunk and lost in consequence of a collision with the steamship.   The collision happened between 3 and 4 o'clock on the morning of the 16th of June, 1893, at a point outside the capes of the Chesapeake bay, about 10 miles east of Cape Henry light.   The faults alleged against the steamship are that her lookout was not properly placed, that she negligently failed to see the light and to hear the fog signals of the schooner, and that she was going at too great a rate of speed in a fog.   The fault charged against the schooner is that, in a fog too dense to permit her lights being seen, she failed to give notice of her presence by sounding proper signals with a fog horn.

The fog was not widespread, but was in low-lying banks.   Its existence is proved by the officers and witnesses from on board the Michigan, and by the officers of the Dresden, a steamship following about a mile astern of the Michigan, by the two pilots who had just been discharged from those steamers, and by witnesses from schoon-

ers which were anchored within two or three miles of the place of collision. The Michigan was being navigated with reference to the existence of the fog. She was sounding her steam whistle, as is proved by many disinterested witnesses not on board or connected with her. It is also established by her own witnesses that when she entered the dense fog bank, about 10 minutes before the collision, she slowed her engines to half speed on account of the fog. Her officers testify that they were uneasy and watchful, because they were in the track of vessels close to the capes. The master and second mate, with a quartermaster at the wheel, were on the main bridge, and a lookout forward on the lookout bridge, 35 to 40 feet from the extreme bow. Their testimony is that, although watchful and attentive, they heard no fog signal, except from the steamship astern, and could see no light until they were close upon the schooner, when they saw the schooner's red light dimly, and then heard a fog horn; that immediately the engines of the steamer were reversed full speed·astern, and her helm put to port, but too late to avoid the collision. The blow inflicted upon the schooner was a perpendicular blow aft of midship on the schooner's side, but it did not throw any one on board the schooner off his feet, and did not penetrate deep, and was hardly felt at all on the steamer, facts which indicate that the steamer's speed was moderate, and that, was very nearly checked.

Nothing in the appearance or testimony of the steamer's witnesses has caused me to hesitate in accepting their statements that they were vigilant and watchful, and, knowing that the safety in the fog was dependent on their listening for signals, were listening attentively. In such a case the libelants must assume the burden of satisfying the court, by witnesses whose testimony is satisfactory and convincing, that the schooner's fog signal was properly sounded, and that the reason those on the steamer did not hear it was their want of proper attention. Under such circumstances the testimony in support of their contention should be free from contradictions, and not consistent with a reasonable explanation opposed to their contention, suggested by the facts, or which their own witnesses have at any time put forward. It is quite obvious, I think, that immediately after the collision those on the schooner did not suppose that the fault which caused the collision was the steamer's not hearing the schooner's fog signals, but was the steamer's not having seen the schooner's lights. This appears from the conversations detailed by the schooner's crew, and also by the steamer's witnesses, and is confirmed by the master's protest made the same day at Norfolk, in which no mention is made of the fog or foghorn, and in which the master says they saw the steamer's lights 20 minutes before the collision. It also appears in the testimony of the schooner's lookout, taken in Boston in July, the substance of which is that he considered it only a little hazy; that he began blowing the horn when the haze set in, and then presently it cleared away, and he stopped blowing until he saw the steamer close upon him, and saw both her lights, and concluded that she had changed her course, and was not going clear, and then he began blowing a warning to the steamer. I think this testimony given in July must be taken as more accurate than that

given by him in court the following January. I am quite satisfied, notwithstanding the schooner's witnesses may have persuaded themselves, after a lapse of time, to the contrary, that the fact, in all probability, is that the fog horn was only sounded by way of trial when it was first brought on deck, and then, the lookout not deeming it necessary, it was not sounded again until the steamer was close upon him, and that blast, as well as the hail, was heard on the steamer; and I think it is also established that the blast was not given until after those on the steamer had seen the schooner's red light, and had given the order to reverse full speed astern, and to put her wheel hard a-port. I shall not attempt to cite the testimony of the other witnesses from on board the schooner, but a careful consideration brings me to the conclusion that, notwithstanding many positive statements about sounding her fog horn, there are matters which are only consistent with the finding that the horn was not regularly sounded, and that those on board the schooner did not think the thickness of the fog required it. It appears probable that the steamer's lights, which were electric lights of high power, were seen from the schooner a long way off before the fog shut in. The master of the schooner, seeing the steamer's green light, supposed she would pass ahead of him. As the schooner was drifting out to sea with the tide, and was becalmed, and had no steerage way, there was nothing for her to do, and the master went below. The second mate, the wheelsman, and the lookout, who were on deck, if they paid any attention to the signals which both the Michigan and the Dresden were sounding as fog signals, may have supposed they were signals for the pilot boat. At any rate, they paid no attention to them, and say they did not hear them, although it is proved that they were sounded. This does not indicate vigilance, and is only consistent with the supposition on their part that the schooner's lights could be seen.

There remains to consider whether the steamship was going at too great a speed. Moderate speed in a fog is that rate which will permit a steamer to stop, after hearing a fog signal, in time to avoid the vessel which has complied with the law in giving it. There is hardly room for doubt in this case that if a proper fog signal had been given, and had been heard on the steamer, she could have easily avoided the schooner. Her half speed was not above five to six knots, and, seeing the schooner's light at about two lengths off, she was even then nearly able to stop her headway, and was able to change her course so that, if the schooner had been making any speed through the water, she would have escaped. Less than half a minute earlier warning to the steamer would have been sufficient to have averted the disaster.

It is urged that the steamer's lookout would have been more advantageously placed if in the eyes of the ship. But the sea was smooth, the wind very light, and from the east, bringing sounds from the direction of the schooner, and from all vessels directly ahead of the steamer, and there were no exceptional circumstances requiring the lookout to be put in the very eyes of the steamer. All the testimony adduced tends to prove that in a fog of this character the best place for the lookout, both for hearing and seeing, was on the lookout bridge, constructed for the purpose, and where he was

placed. I find that the libelants have failed to make out their case, and the libel must be dismissed.

This case was reversed on appeal by the circuit court of appeals for the fourth circuit at the October term, 1894.