## DUNIGAN TOOL & SUPPLY CO. v. CARROLL et al.

### No. 7843.

Court of Civil Appeals of Texas. Austin.
April 19, 1933.

Rehearing Denied May 10, 1933.

Harrell & Allison, of Breckenridge, for appellant.

James Cornell and R. G. Hughes, both of San Angelo, for appellees.

BLAIR, Justice.

The question in this appeal is whether certain contracts for the drilling of oil wells constitute a mining partnership as a matter of law between C. M. Carroll and Cardinal Oil Company, so as to render the latter liable as a partner for certain materials sold by appellant, Dunigan Tool & Supply Company, to Carroll, and used by him as necessary materials in drilling the oil wells.

On July 8, 1929, George D. Morgan, as the owner of an ordinary seven-eighths oil and gas lease on two tracts of land, executed a written contract with Carroll, as contractor, to drill a test well for oil and gas on each tract of the land. Carroll agreed to pay "all expenses for labor, fuel, water, machinery, upkeep, cordage, and other equipment, and free of any expense to owner." The owner agreed to pay as consideration or compensation for drilling the wells as follows:

"(b) To pay to contractor the sum of $4,-000.00 cash, payable $2,000.00 upon completion of one well and $2,000.00 upon completion of the other well. It is understood in this connection that Owner is renting to Contractor a drilling outfit for said wells for $500.00 per month and any and all sums which may be due for rental on said tools and drilling outfit shall be deducted from said cash consideration; and

"To assign and transfer to Contractor by valid legal assignments a three-sixteenths interest in and to the oil and gas mining leases and leaseholds on each of tracts Nos. 1 and 2

first hereinbefore described, said assignments to be delivered to Contractor upon completion of the respective wells."

Other provisions in the contract required the contractor to carry public liability and workmen's compensation insurance; to furnish daily reports as to the progress of the drilling operations; to plug the wells in accordance with the rules of Railroad Commission in the event they were dry holes; and to draw and rack the casing used in the well for a certain stipulated price, under the direction of the owner. The two wells contracted for and drilled by Carroll were producers, and in accordance with the drilling agreement Morgan executed an assignment of a three-sixteenths undivided interest in the oil and gas in the two tracts of land to Carroll. This drilling contract also provided that, in the event the wells were producers of oil in paying quantities, the parties would execute "a fair joint operation contract * * * on the Humble form as nearly as possible." This operating agreement was executed and in substance provided that Morgan should have exclusive charge, control, and management of the development and production and marketing of the oil, and that a joint account should be kept and each party charged with his pro rata of the cost of operation. In August, 1929, Morgan and the owners of the remaining thirteen-sixteenths interests in the oil and gas lease incorporated as the Cardinal Oil Company, each owner exchanging his interest in the lease for stock in the Cardinal Oil Company; and, desiring to further develop the lease, the Cardinal Oil Company, with Morgan as its president, on January 6, 1930, entered into a written contract with C. M. Carroll for the drilling of additional wells. This contract was similar to the Morgan contract with Carroll, in that it provided that the Cardinal Oil Company had the exclusive power to determine when and where each additional well was to be drilled, and further provided as follows: "Contractor agrees to furnish and pay for drilling machine engine and all equipment, material, water, fuel, tools, transportation, supervision, labor and all necessary supplies and all other charges excepting cellar, slush pit, and casing as provided below."

The price to be paid for the drilling of this well was $2 cash and $1 in oil per lineal foot. The contractor was required to carry employees' compensation insurance, and was made wholly responsible for any fire loss; and the contract contained the following provision: "Nothing herein shall be construed as creating a drilling or contracting partnership between the parties, provided however that this provision shall in no way be construed or interpreted to cancel or imperil an operating agreement between George D. Morgan and Claude M. Carroll. Dated ——, 1930."

The terms of this contract were orally renewed as each subsequent well was drilled without the execution of a new contract, and the joint operating account for each producing well, as between the Cardinal Oil Company and Carroll, was kept in the same manner as the joint operating contract with Morgan. Dunigan Tool & Supply Company sold Carroll the materials representing the open account sued upon herein, beginning in July, 1929, and ending in April, 1930, solely upon his credit and responsibility, there being no holding out of the Cardinal Oil Company as a partner; and no question of estoppel arises in the case. None of the materials were used in the joint operating contracts, but were all furnished and used in connection with the drilling contracts, and were materials for which Carroll contracted and agreed to pay as a part of his drilling agreement; and all of the materials sued for, aggregating $2,137.67, less a credit of $633, were used by Carroll in the drilling of the first two wells, except $164.39, which were used in drilling of some of the additional wells contracted for by the Cardinal Oil Company.

Appellant contends that from these contracts and acts of the parties three outstanding and essential facts appear, which constitute Carroll and Morgan and/or Cardinal Oil Company a mining partnership as a matter of law. We quote appellant's contentions as follows: "In this case the outstanding and essential facts are: First, that Cardinal Oil Co. and C. M. Carroll were joint owners of the lease; Second, that they were actually uniting and co-operating in the development and operation thereof and in sharing in the profits as such; Third, that the materials and supplies on which this suit was brought were used in such operations and development. The result is inevitable that Cardinal Oil Co. became as a matter of law jointly and severally liable with the defendant Carroll for these expenses of operation and development regardless of the form of written contracts between the defendant Carroll and Cardinal Oil Co., wherein and whereby it was attempted to make Carroll liable only for such materials and supplies."

We do not sustain these contentions. No materials were furnished by appellant in connection with the joint operating contracts executed for the purpose of producing and marketing the oil after the wells were completed and accepted under the drilling contracts. The operating contracts were separate and distinct from the drilling contracts, and would not have been executed had the wells proved dry holes. We therefore regard them as not being pertinent to the relationship of the parties as created by the terms of the drilling contracts, in connection with which appellant sold and furnished the materials in suit to Carroll.

■■ Nor do we interpret the terms of the drilling contracts as constituting a mining

partnership between Carroll and Morgan and/or Cardinal Oil Company. The manifest purpose of the drilling contracts was to obtain the drilling of certain oil wells for a certain stipulated consideration or compensation. They evidence no agreement of a joint undertaking or agency to operate the leases, and to share profits as such, but the contrary is clearly evidenced by the contract with Morgan, in that it provided that the specified interest to be assigned Carroll in the leases, or the specified amount of oil to be credited to Carroll, were to be assigned and credited as a part of the compensation to him for drilling the first two wells. The contracts with the Cardinal Oil Company did not take into consideration any interest of Carroll in the leases; but the parties agreed upon a stipulated price to be paid Carroll for drilling each additional well, the same as if he had been an independent contractor. The casing and other things furnished by Morgan and the Cardinal Oil Company under the terms of the various drilling contracts with Carroll were furnished as a part of the consideration for drilling the wells; that is, by furnishing such matters and things, Morgan and/or the Cardinal Oil Company were enabled to obtain the drilling of the wells for a less price than otherwise would have been the case had they not furnished to Carroll the materials mentioned in the contracts. It is therefore manifest that a mining partnership, as that relationship has been defined in law as arising from joint operations and sharing of profits as such, was not shown in this case; but the contracts themselves clearly show that the parties contracted for the drilling of certain oil wells for a stipulated consideration, and not in consideration of sharing profits as such, or joint operation of a mining enterprise. We agree in this connection with appellant that the mere fact that the contracts last made stipulated that the parties did not intend to form a mining partnership, is not material if in fact their acts and conduct constituted that relationship as a matter of law; but we interpret the contracts themselves as not creating the relationship of mining partners for the reasons aforementioned. The parties were authorized to make the contracts in question, and since appellant admits that it knew nothing of the contracts, and furnished the materials solely upon the credit and responsibility of Carroll, it has no legal right to complain of the actual relationship created by the contracts as between the parties thereto.

In the recent case of Gardner v. Wesner (Tex. Civ. App.) 55 S.W.(2d) 1104, 1106, a careful analysis of the authorities was made with regard to what facts or contracts constitute a mining partnership. The facts and contracts in the two cases are similar in many respects, and the rules of law announced in the Gardner Case control this case. In the Gardner Case it was held that the joint ownership of the mining property will not alone create a mining partnership; but that, as was held in the cases of Wagner Supply Co. v. Bateman, 118 Tex. 499, 18 S.W.(2d) 1052, Munsey v. Mills, 115 Tex. 469, 283 S. W. 754, and the other cases cited, "joint operation, sharing of profits, community of interests, and the mutual agency" must also be shown in order to constitute a mining partnership. The Gardner Case further held that the mere "sharing in net profits of mining venture does not create relation of mining partner," and especially so where the terms of the agreement show the profits were paid as compensation for services rendered. Under the express terms of the contracts in this case there was no joint operation or mutual agency, but the contrary was clearly provided, in that the owner had exclusive control of when and where drilling was to be done and the contractor merely agreed to do the drilling for a stipulated price. The contracts also clearly provided that the share in the lease or net profits in the oil to be paid Carroll were to be part compensation for drilling the oil wells. The Cardinal Oil Company was therefore not liable for the account sued upon as a mining partner, and the judgment of the trial court will be affirmed.

Affirmed.