## SHEFFIELD et al. v. BURCH.

### No. 3594.

Court of Civil Appeals of Texas. Beaumont.

Jan. 10, 1940.

Rehearing Denied Jan. 24, 1940.

A. R. Rucks and Robert M. Lyles, both of Angleton, for appellants.

Gilbert T. Adams, of Beaumont, for appellee.

WALKER, Chief Justice.

Appellee, Tom Burch, instituted this suit in the district court of Hardin county against Elbert Jeans and George W. Sheffield, Jr., and appellants, A. R. Rucks and H. E. Middleton, praying for judgment against them for the sum of $3,255 as the reasonable rental value of a drilling rig. For cause of action, he alleged that the defendants owned an oil lease on a certain tract of land in Hardin county, and as partners used his rig in drilling the well. On trial to the court without a jury, judgment was rendered in favor of appellee against the four defendants, jointly and severally, for the sum of $333. On his prayer, appellee was also awarded a writ of possession to recover the custody of the rig. Only A. R. Rucks and H. E. Middleton have prosecuted their appeal from the judgment.

The undisputed evidence is that Jeans and Sheffield were partners in drilling the well, and as partners used the rig and were liable for its rental value. The sole point made by appellants is that the evidence was insufficient to raise against them the issue of partnership with Jeans and Sheffield in drilling the well. The evidence may be briefly summarized as follows: As lessee, Sheffield took the lease from F. J. DeMeritt on the 19th day of September, 1938, acquiring under his lease a ⅞ths interest in the minerals. By the terms of the lease, on the penalty of forfeiture, he was obligated to begin drilling operations within 60 days from the date of his lease. Being without sufficient funds to drill the well, Sheffield undertook to finance his operations by selling undivided interests in his leasehold estate, and in certain personal property owned by him, in his drilling operations. On the 22nd day of September, 1938, Sheffield executed to appellant Rucks the following assignment of an undivided interest in the leasehold estate:

"Assignment of Oil and Gas Lease

"Whereas, on the 19th day of September, 1938, a certain oil and gas mining lease was made and entered into by and between F. J. DeMeritt, Trustee, of Houston, Harris County, Texas, Lessor, and Geo. W. Sheffield, Jr., of Angleton, Brazoria County, Texas, Lessee, covering the following described land in the County of Hardin and State of Texas, to-wit:

"Five acres of land, being the east one-half (½) of the Wash Brown ten acre tract out of the Stephen Jackson 1000 acres of land in Hardin County, Texas, in what is known as the Sour Lake Oil Field, it being the intention to include all land owned or claimed by Lessor in said Wash Brown ten acre tract.

"Said lease being recorded in the office of the County Clerk in and for said County in Book ——— page ———, and to which reference is hereby made.

"Whereas, the said lease and all rights thereunder or incident thereto are now owned by Geo. W. Sheffield, Jr.

"Now, therefore, for and in consideration of .One Dollar (and other good and valuable considerations), the receipt of which is hereby acknowledged, the undersigned, the present owner of said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, title and interest of the original lessee and present owner in and to said lease and rights

thereunder in so far as it covers an undivided one-twelfth ¹⁄₁₂ interest in the above described lease, together with all personal property used or obtained in connection therewith to A. R. Rucks and his heirs, successors and assigns.

"And for the same consideration, the undersigned for himself and his heirs, successors and representatives, does covenant with the said assignee, his heirs, successors or assigns, that he is the lawful owner of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same, and that said rights, interests and property are free and clear from all liens and incumbrances, and that all rentals and royalties due and payable thereunder have been duly paid; and that the undersigned will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"In witness whereof, the undersigned owner and assignor has signed and seal this instrument this 22nd day of September, 1938."

A second assignment, identical in its terms with the Rucks assignment, was made to appellant Middleton. Mr. Sheffield testified:

"Q. Do you or Jeans have the money now that Mr. Rucks paid you and Mr. Middleton paid you? A. No, sir; I do not.

"Q. You sold that interest and used the money to finance that well? A. I sold that interest and used the money to finance the operations, and in whatever way I saw fit.

"Q. That was your purpose in selling that interest? A. Partially. * * *

"Q. What was the nature of the conversation you had with Mr. Rucks at the time he purchased this interest from you? A. I told him I was going to drill a well at Sour Lake, and I had finances of my own, but not enough to drill the well. I wanted to sell an interest in the lease to complete the financing of the drilling of the well.

"Q. And he agreed to purchase? A. Yes, sir.

"Q. And you got the money and put it in the well? A. I used it in that connection.

"Q. And substantially the same conversation with Mr. Middleton? A. Yes, sir.

"Q. And you took that in compliance with your agreement and put it in the well? A. I wouldn't say that. I was under no obligation.

"Q. They knew why you were selling the interest? A. I told them I needed money to help finance the drilling of a well."

Mr. Elbert Jeans testified:

"Q. I believe you were the manager in charge out here on this well; is that right? A. Yes, sir.

"Q. I will ask you if Mr. A. R. Rucks and Mr. H. E. Middleton, or either of them was ever out on this lease during its operations? A. Mr. Rucks—I think Mr. Middleton was once. I am not sure about that.

"Q. How long did Mr. Middleton stay? A. If he came, it was one afternoon, and he just came to town. I am not sure about that.

"Q. They just left the management up to you, and didn't come out; is that right? A. Yes, sir."

On authority of Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052, the evidence raised against appellants the issue of partnership. So, the judgment of the lower court should be in all things affirmed, and is accordingly so ordered.

Affirmed.