## WOLVERTON v. THOMAS et al.
### No. 2414.

Court of Civil Appeals of Texas. Eastland.

Oct. 29, 1943.

Rehearing Denied Dec. 10, 1943.

Stinson, Hair, Brooks & Duke, of Abilene, for appellant.

Smith & Eplen, of Abilene, Paul Petty, of Ballinger, and Malone, Lipscomb, White & Seay, of Dallas, for appellees.

LESLIE, Chief Justice.

On the theory that they were mining partners, M. H. Wolverton instituted this suit against Leon Thomas, M. B. Moore and J. B. Templeton to recover from them, jointly and severally, for services alleged to have been rendered them by him in oil drilling operations in Kimble County, Texas. Plaintiff's suit was based primarily on two written contracts, one of date March 23, 1940, and one of date June 4, 1940. Wolverton was not a party to the contract of March 23rd. J. B. Templeton did not personally sign the contract of June 4th. A considerable portion of Wolverton's services were performed under oral agreements made subsequent to both written contracts, but in connection therewith.

In substance it is Templeton's contention that he was in no manner a party to said oral arrangements and was not bound thereby. In his answer Templeton denied that the contract of March 23rd, taken by itself or in connection with the contract of June 4th or in connection with any subsequent oral contract, had the effect of making him such partner. Templeton also presented a cross action against Thomas and Moore on certain promissory notes executed by them to him for money expended by them in said operations.

Defendant M. B. Moore answered, denying the allegations of plaintiff's petition, wherein Wolverton alleged the facts which he deemed sufficient to constitute Moore, Thomas and himself a mining partnership. In addition to such denial, Moore alleged: "(c) This Defendant (Moore) says that the instruments executed between Moore and Thomas on the one hand and Templeton on the other, speak for themselves, but he specifically alleges that if at any time Thomas and Moore made any statements to said Wolverton, or did any other act which in anywise lead said Wolverton to believe that Templeton was a partner in such drilling operations, that such statements were made to said Wolverton by Thomas, without this Defendant's knowledge or consent."

Defendant Moore's prayer concluding that pleading is as follows: "Wherefore, this Defendant admits that said Plaintiff Wolverton is entitled to recover his judgment against defendants Moore and Thomas in an amount not to exceed $14,906.00; but he prays that otherwise the plaintiff be denied all relief sued for."

In a separate answer to the second amended original answer of his co-defendant (Thomas), said Moore "specially denies the conclusion of law alleged by said Thomas in his said amended original answer, to the effect that said Thomas, Moore and J. B. Templeton were partners." Moore also denies the other allegations in Thomas' said answer and concludes by alleging: "This Defendant (Moore) says that said M. H. Wolverton is entitled to recover his just compensation for the services rendered to said Thomas and M. B. Moore, but that the partnership which existed between said Thomas and said Moore has never been dissolved, except to the extent that they spent all of the money furnished by said Moore and said Templeton and all drilling operations ceased, and all of said leases lapsed, but all debts owing by said partnership are owed jointly by said Thomas and said Moore, * * *."

Defendant Thomas in his second amended original answer denies only the allegations contained in the pleadings of his co-defendants Templeton and Moore. He expressly affirms therein the partnership re-

lation alleged by plaintiff Wolverton, but further alleges that he (Thomas) was practically ejected therefrom and required to relinquish his interest to Moore and Templeton, who assumed the partnership debts then due and to become due. Hence he prays for judgment against Moore and Templeton for any amount plaintiff might recover against him.

Said Thomas further alleged that the notes sued on herein by Templeton in his cross action against Moore and Thomas were a part of such partnership debts, and that under his agreement with Moore and Templeton he was relieved from further obligations thereon.

The cause was tried by the Court without the intervention of a jury, and at the conclusion of the testimony the trial court found the instrument of March 23, 1940, was sufficient to constitute Leon Thomas, M. B. Moore and J. B. Templeton mining partners. The Court awarded a judgment against Thomas, Moore and Templeton, jointly and severally, for the sum of $1,000.

The trial court also rendered judgment in favor of plaintiff Wolverton and against Thomas and Moore, jointly and severally, for the sum of $18,331, but plaintiff was denied like recovery for that sum against Templeton.

On his cross action the Court awarded judgment in favor of Templeton, against Thomas and Moore, on said notes.

Neither Thomas nor Moore appealed from any part of the judgment. Wolverton appeals, seeking to hold Templeton along with Thomas and Moore, jointly and severally, for the full amount of the judgment, $19,331, and Templeton appeals, seeking to avoid liability for the $1,000 judgment against him and also to demonstrate the correctness of the trial court's judgment in exonerating him from any liability as a partner of Thomas and Moore for the further sum of $18,331.

Appellee Templeton presents an alternative contention "that even if the instrument, of date March 23, 1940, could be construed as being sufficient to constitute Leon Thomas, M. B. Moore and this Appellee (Templeton) a mining partnership, such partnership was for the fixed, definite and limited purpose of completing a particular well which was then in process of being drilled and definitely limited this Appellee's maximum liability to $3000.00, of which the undisputed evidence showed that he had already advanced the sum of $2,000.00, and hence · in no event could he be held liable for more than the additional sum of $1,000.00."

The instrument of March 23, 1940, deals with certain oil and gas leases embracing lands in Kimble County, Texas, and apparently owned by Thomas and Moore, who, when they entered into negotiations with Templeton, were endeavoring to drill an oil well and test out the oil possibilities on said land. They had then reached a depth of 492 feet and were unable financially to proceed with the enterprise. In this situation they sought financial assistance from Templeton.

They set out in a letter to Templeton a summarized statement of the condition of their enterprise, the depth of the well, the oil possibilities of the acreage, and their needs for further prosecution of drilling thereon, as well as possible future plans. Following such statement the letter, which constitutes the contract of March 23rd, is in part as follows:

" * * * Your proposition was to advance us $750.00, we to give you two notes in amount of $250.00 . each aggregating $500.00, to take care of the expense in getting the pipe to the location and test the Adams Branch Sand. In the event this proves successful we will then want to drill several shallow wells, if it doesn't, our plan now is to go to the next pay sand; or to our contract depth of 2000' if we all agree it is advisable. For the added expense we will give you additional notes at the same ratio not to exceed $3000.00 total cost. We do hereby agree that any and all returns from the sale or operations of any and all interests we have in the above described acreage and rights will first be applied as a payment to you for all money advanced by you on this project. After this obligation is satisfied all further returns we agree to give you a one third interest. It is further agreed that we will give to you a legal conveyance of title to a one third interest in all of the above described properties and rights at any time you may request. In addition to the above we will want a letter from you stating you are going to see us through, not to augment this trade but for the influence it will have on a prospective purchaser. We know most of the major companies are interested in this area and some assurance we are going to fulfill our contract will

have lots of weight, we fully believe we can drill the well on the bottom hole money we get from the companies, or large independent operators. The operations will be carried on in the name of Thomas & Moore, insofar as the name you will not be known in the deal, but we shall expect your council throughout the entire operations, two thirds of the holdings will be in M. B. Moore's name and one third in Leon Thomas'.

"Respectfully yours,
"Leon Thomas———
"M. B. Moore———
"J. B. Templeton——"

When Moore and Thomas first sought the aid of Templeton, they were drilling on the day-labor basis and had reached the above stated depth. The Adams Branch sand was recognized to be at a depth of about 800 feet in that area and said parties expected to find oil at that horizon. On March 23rd Wolverton was unknown to the enterprise.

Obviously it was contemplated by the parties that if they did not discover oil in said formation they would discuss further operations with Templeton, and, if all agreed it was advisable, drilling would be prosecuted to the original contract depth of 2,000 feet. According to the agreement and the testimony of Thomas and Moore, each of them in that event would want to borrow more money from Templeton to enable them to meet any additional expenses incurred by them respectively in further drilling.

In their efforts to drill the well Thomas and Moore appear to have developed a crooked hole which they were unable to straighten. At that juncture they procured the services of Wolverton, an experienced driller, who endeavored to straighten the hole but found himself unable to do so. He made such report to Thomas and Moore and recommended that the drilling be set over and a new well drilled pursuant to such recommendation and after consultation among themselves the contract of June 4th was entered into. That contract is to the tenor following:

"This Agreement, made and concluded this the 4th day of June, A.D. 1940, by and between Leon Thomas of Ballinger, Runnels County, Texas, and M. B. Moore of Abilene, Taylor County, Texas, a partnership, party of the first part, and M. H. Wolverton of Abilene, Taylor County, Texas party of the second part.

"Witnesseth, that for and in consideration of payment hereinafter mentioned to be made and performed by said party of the first part, the said party of the second part doth hereby covenant and agree to drill one well on the Wilkinson Ranch in Kimble County, Texas. Said well to be located on section 24, B. S. & F. Abstract No. 1822, Certificate No. 0/104 (block 1), furnishing all tools, equipment and power necessary to complete the well to 2000 feet or to the Ellenburger Lime. The said party of the first part is to furnish the necessary pipe f.o.b. the location. The said party of the first part agrees to pay the said party of the second part the sum of Three & 50/100 Dollars ($3.50) per lineal foot of hole for the completed well. A completed well shall be oil or gas in paying quantities or the depth mentioned above.

"Said party of the second part agrees to commence work within ten days from date of this contract and diligently prosecute said work to completion.

"In Witness hereof, we the parties, have hereunto set our hands the day and year first above written.

"Thomas & Moore
"By Leon Thomas     First
"By M. B. Moore     Party
"M. H. Wolverton     Second
"By M. H. Wolverton Party

Templeton did not in person sign the above contract, but it is the plaintiff's theory that Thomas and Moore were acting not only for themselves, but for him, and that his name was withheld in obedience to the contract of March 23rd, which provided: "The operations will be carried on in the name of Thomas and Moore. Insofar as the name, you will not be known in the deal, but we shall expect your counsel throughout the entire operations, two-thirds of the holdings will be in M. B. Moore's name and one-third in Leon Thomas'."

The testimony of the different parties was consistent with their respective pleadings. The evidence is voluminous. The trial court has filed Findings of Fact and Conclusions of Law. The controlling conclusions, which are under attack by either Templeton or Wolverton from different angles, are, in part, as follows:

"Findings of Fact

"1. I find that on or about March 23rd, 1940, the Defendants Leon Thomas, M. B.

Moore and J. B. Templeton, entered into a written contract, dated March 23d, 1940, whereunder it was agreed to drill and prospect for oil and/or gas on certain lands in Kimble County, Texas, whereon the Defendants Leon Thomas and M. B. Moore owned and held oil and gas leases. Under the terms of said contract, the Defendant J. B. Templeton agreed to advance certain moneys for expenses to be incurred, in getting pipe to a certain location on said leases, and for testing the Adams Branch Sand, for drilling several shallow wells, if such test proved successful, and, if such test did not prove successful, to drill to the next pay sand, or to a contract depth of 2,000 feet.

"For certain portions of said advancements to be made by the Defendant Templeton, the Defendants M. B. Moore and Leon Thomas agreed to give the Defendant J. B. Templeton, their notes. The contract specifically limited the amount to be so advanced by the Defendant Templeton to 'not to exceed $3000.00 total cost' of the operation.

"The contract provided that, after testing the Adams Branch Sand, if such test proved unsuccessful, they would drill to the next pay sand, or to a contract depth of 2000 feet, if all of said Defendants agreed it was advisable. The contract further provided that the operations would be carried on in the name of Thomas & Moore and that, 'insofar as the name', the Defendant Templeton would not be known in the deal, but that 'we shall expect your (Templeton's) counsel throughout the entire operations'.

"The contract further provided that all returns from the sale or operations of any and all interests in the acreage and rights, were first to be applied to the payment of the Defendant Templeton, for moneys advanced by him on the project, and that after said obligation was satisfied, the Defendant Templeton was to have a 1/3d interest in all further returns. It was further agreed that the Defendants Moore & Thomas, would give to the Defendant Templeton, a legal conveyance of title to a 1/3d interest in all of the oil and gas leases and properties and rights, at any time the Defendant Templeton might request same.

"2. (This paragraph of the Findings pertained to the promissory notes executed respectively by Thomas and Moore to Templeton. 'The aggregate amount so advanced by the Defendant Templeton to the Defendants Moore and Thomas was $2000.-00.' This finding constitutes the basis of the judgment against Thomas and Moore on the notes presented by Templeton's cross action, and paragraph 2 is omitted.)

"3. That, under the provisions of said contract, the Defendants Thomas, Moore and Templeton, proceeded to drill for oil and/or gas on a portion of said leased premises, and the moneys so advanced by the said Templeton, as aforesaid, were used in getting pipe to the location of the well and for the drilling operations. When the well was drilled to a depth of approximately 750 feet, the hole was found to be crooked, and abandoned, and the Defendants Moore and Thomas, for themselves and in behalf of the Defendant Templeton, employed the plaintiff M. H. Wolverton to drill another well on a portion of said leased premises, to a depth of 2000 feet, or to the production of oil and gas in paying quantities at a lesser depth, for which the Plaintiff was to be paid $3.50 per lineal foot, and a contract for such drilling was entered into between said Plaintiff, and the Defendants Moore and Thomas, on June 4, 1940, whereby an indebtedness was incurred with the plaintiff, in the sum of $7,000.00. When said well was down to a depth of 2,000 feet, without any production of oil or gas, the Defendants Moore and Thomas verbally contracted with the plaintiff M. H. Wolverton, to drill said hole to an additional depth of 200 feet, but the plaintiff has abandoned his claim against Defendants for drilling said 200 feet. After said well had been drilled to said additional depth of 200 feet, without any production of oil or gas, the Defendants Moore and Thomas, verbally employed the said plaintiff M. H. Wolverton, to drill said hole to a deeper depth, for which they agreed to pay the Plaintiff the sum of $100.00 a day, and, by virtue of such agreement, the Plaintiff drilled 13 additional days, for which Defendants Moore and Thomas became indebted to the plaintiff for an additional sum of $1300.00. Thereafter, the Defendants Moore and Thomas entered into a verbal agreement with the Plaintiff Wolverton, whereby said Plaintiff agreed to drill said hole to a still deeper depth, for which said defendants Moore and Thomas, agreed to pay said plaintiff $90.00 per day; and by virtue of said agreement, the Plaintiff drilled said well for an additional 117 days, whereby said Defendants Moore and Thomas became in-

debted to the Plaintiff for an additional sum of $10,530.00. The Defendant J. B. Templeton's signature was not on the above mentioned contract of date June 4, 1940, between the Plaintiff M. H. Wolverton and the Defendants Thomas and Moore; and the defendant J. B. Templeton was not a party to any of the subsequent verbal agreements between the defendants Thomas and Moore, as hereinabove set out.

"That the Plaintiff M. H. Wolverton sustained a loss of $501.00 by reason of tools left in the hole, for which the Defendants Moore and Thomas are indebted to him.

"4. I further find that, by virtue of said contract of date March 23rd, 1940, and the drilling operations thereunder,—

"(a) There was a joint ownership of the oil and gas leases therein described by the Defendants M. B. Moore, Leon Thomas and J. B. Templeton, and that the Defendant J. B. Templeton had a then present interest in said leases, with the specific right to demand from the Defendants Moore and Thomas, a legal conveyance of title to a 1/3d interest in said properties at any time he saw fit, subsequent to the execution of said contract;

"(b) There was a joint operation of said leases, and that the Defendant J. B. Templeton was advised of the drilling operations, and that the same were carried on with his knowledge and consent;

"(c) That there was a community of interests of said three Defendants in said operations;

"(d) There was a mutual agency of said three Defendants in the management of said leases, and the exploration for oil and gas; and

"(e) There was a sharing of profits in that, under the contract, 'from the returns of the sale of acreage or operations, the defendant J. B. Templeton was first to be reimbursed for moneys advanced by him, as aforesaid, and after said obligation was satisfied, each of said Defendants, including the Defendant Templeton, was to have a 1/3d interest in all returns from such sale of acreage and operations.

"5. I find that, by reason of said contract of date March 23d, 1940, and the operations thereunder, the Defendants M. B. Moore and Leon Thomas are jointly and severally indebted to the plaintiff, M. H. Wolverton, in the amount of $19,331.00.

"6. I find that under the terms of said written contract of March 23d, 1940, the Defendant J. B. Templeton limited his liability to the amount of $3,000.00, cost of the operations thereunder, and that the only claim which the Plaintiff, M. H. Wolverton, has against the Defendant J. B. Templeton in this case, is by virtue of said contract of date March 23d, 1940.

"I further find, therefore, that the Defendant J. B. Templeton is indebted to the plaintiff, M. H. Wolverton, jointly and severally with M. B. Moore and Leon Thomas, to the extent of the difference between the money advanced by the Defendant Templeton, or $2000.00, and the $3000.-00 limit on his liability, under the contract, which difference I find to be the sum of $1,000.00.

"7. (Paragraph 7 is omitted as it pertains to the indebtedness of Thomas and Moore to Templeton as evidenced by said notes, and neither Moore nor Templeton appeal therefrom.)

"8. (Paragraph 8 of Findings omitted as not material under disposition made of the appeal. In substance it is a finding that Templeton and Moore at no time agreed to assume the debts of the partnership.)

"Conclusions of Law

"I conclude as a matter of law:

"I. That said contract of date March 23d, 1940, between the defendants M. B. Moore, Leon Thomas and J. B. Templeton, and the operations thereunder, contained all of the elements of a mining partnership, and was, in fact, a mining partnership, and that all of said Defendants were partners in the operations under said contract, but I further conclude that the liability of the Defendant J. B. Templeton thereunder, was expressly limited to an amount not to exceed Three Thousand Dollars of the total cost of such operations.

"II. That the Plaintiff, M. H. Wolverton, is entitled to judgment against the Defendants M. B. Moore, Leon Thomas and J. B. Templeton, jointly and severally, in the amount of $1000.00, with six percent interest thereon, from January 1st, 1942, and costs of suit, such recovery being limited to the difference between said J. B. Templeton's liability of $3,000.00 under the contract, and the amount of $2,000.00 advanced by him thereunder, amounting to the sum of $1,000.00.

"III. That the Plaintiff M. H. Wolverton, is entitled to recover judgment against

the Defendants M. B. Moore and Leon Thomas, jointly and severally, in the sum of $18,331.00, with 6% interest thereon from January 1st, 1942, together with costs of suit.

"IV. That the Defendant J. B. Templeton is entitled to judgment on his cross action against the Defendant M. B. Moore for $649.00, and against the Defendant Leon Thomas for $649.00, and against the Defendants M. B. Moore and Leon Thomas, jointly and severally, for the additional sum of $642.00 by reason of the Findings of Fact set out in Paragraphs 1 and 2, supra.

"V. That the Defendant Leon Thomas is not entitled to recover any amount on his cross action against his co-defendants, M. B. Moore and J. B. Templeton.

"VI. That all other relief prayed for, by both Plaintiffs and the Defendants, should be in all things denied.

In his brief Templeton presents five points for reversal of the $1,000 judgment as to him. By each point he contends that under the testimony there is an absence from the case of some particular major element necessary to constitute a mining partnership as to him. 12 Texas Law Review 410. That no such partnership ever existed, and such being the case he (Templeton) is not bound by any contract, written or oral, which Wolverton had with Thomas and Moore and which he (Templeton) did not personally sign or to which he did not personally agree.

Wolverton by his appeal challenges the trial court's Findings and Conclusions, wherein the trial court undertakes to limit the liability of Templeton to $3,000 after such court had found, both in fact and in law, that the contract of March 23, 1940, between Thomas, Moore and Templeton "contained all the elements of a mining partnership, and was in fact a mining partnership, and that all the defendants were partners in the operations under said contract * * *."

In an excellent brief, attorneys in behalf of Templeton cite many authorities in support of each proposition and seek to demonstrate that when there is an absence of any one of said major elements no liability can be established against one sought to be held on the theory of such partnership (sometime referred to as a joint enterprise). Numerous cases reflecting deficiencies in such respects are cited. Seif-ert v. Brown, Tex.Civ.App., 53 S.W.2d 117 (writ refused); Leath v. Benton Abstract & Title Co., Tex.Civ.App., 9 S.W.2d 501 (writ dismissed); Bolding v. Camp, Tex.Com.App., 6 S.W.2d 94; Lowry Oil Corporation v. Bennett, Tex.Civ.App., 16 S.W.2d 947; Root v. Tomberlin, Tex.Civ. App., 36 S.W.2d 596 (writ refused); Gardner v. Wesner, 55 S.W.2d 1104 (writ refused); Wesner v. Brendel, Tex.Civ. App., 94 S.W.2d 239; Dunigan Tool & Supply Co. v. Carroll, Tex.Civ.App., 60 S. W.2d 296 (writ refused); Cox v. Bond, Tex.Civ.App., 91 S.W.2d 479 (writ dismissed); Southern Underwriters v. Gariepy, Tex.Civ.App., 105 S.W.2d 760 (writ dismissed); Snodgrass v. Kelley, Tex.Civ. App., 141 S.W.2d 381 (writ refused); Sheffield v. Burch, Tex.Civ.App., 136 S.W. 2d 252; Rucks v. Burch, 138 Tex. 79, 156 S.W.2d 975; Grace v. Tannehill, 5 Cir., 54 F.2d 1059; Shell Petroleum Corporation v. Caudle, 5 Cir., 63 F.2d 296; First National Bank of Troup v. Blades, 5 Cir., 93 F.2d 154; Treat v. Murdock, 8 Cal.2d 316, 65 P.2d 881; Utter v. Irvin et al., 5 Cir., 132 F.2d 416; Fink v. Brown, Tex. Com.App., 215 S.W. 846; Ogus, Rabinovich & Ogus Co. v. Foley Bros. Dry Goods Co., Tex.Com.App., 252 S.W. 1048; Eddingston v. Acom, Tex.Civ.App., 259 S. W. 948.

These authorities are believed to be sound and applicable to the facts of those cases, but the facts of the instant case clearly distinguish it from those cited and relied on by Templeton. In those cases we find nothing in substance the same or analogous to the contract of March 23rd, by the terms of which it was solemnly stipulated that Templeton's name should not be known in the drilling operations, but that his counsel and advice would be available to Thomas and Moore as operations proceeded. On the other hand, this record contains an abundance of testimony that Templeton was aware of, or was kept informed, of the drilling operations for the cost of which this suit is prosecuted, and the absence of his name from the contract of June 4th is but in keeping with the spirit and letter of the contract of March 23rd. We believe the testimony conclusively shows his continued interest and participation in said operations either in person or throughout the efforts and negotiations of Moore and Thomas, who, according to the Court's findings, were partners along with Templeton.

Having become a member of said partnership, as found by the Court, Templeton cannot escape full responsibility along with Thomas and Moore for the legitimate debts and obligations incurred while prosecuting said drilling operations sanctioned by him or those authorized to act for him. With the fact of partnership thus established, the law will not permit him to limit his liability for such obligations to third persons, as Wolverton in the instant case. The stipulation in the contract of March 23rd seeking to limit Templeton's obligations to $3,000 cannot be given that effect as against the obligation asserted in this suit. The principle involved is in effect the same as where parties contract to drill an oil well and stipulate that they do not form a partnership but their conduct and operations in fact constitute that relationship. Such stipulation would not be material under those circumstances. Dunigan Tool & Supply Co. v. Carroll et al., Tex.Civ.App., 60 S.W. 2d 296. For the proper expenses in the drilling operations Templeton's liabilities are coextensive with those of Thomas and Moore and the evidence sufficiently establishes Wolverton's claim against Thomas, Moore and Templeton, jointly and severally, in the full amount of said obligation, $19,331. As to said amount no challenge is made in the brief.

So far as the abstract principles of law applicable to mining partnerships are concerned, the authorities cited by Templeton, as well as Wolverton, present no fundamental difference. The difference in the various cases arises from the application of such rules to the different states of facts. As applied to the facts of the instant case and viewed from the standpoint of Templeton, the judgment herein rendered in his favor is believed to be warranted or compelled by such authorities as Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; Roberts et al. v. McKinney, Tex.Civ.App., 187 S.W. 976; Mangum v. Turner, Tex.Civ.App., 142 S. W.2d 951, 952; Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754; and numerous authorities cited therein.

Obviously the Court has affirmatively found that as to Thomas, Moore and Templeton all the elements of such a partnership were present. In other words, the case reflected by this record is one where co-owners work a mine or conduct a mining operation in the sense such an enter-

prise is defined by the above authorities and especially Wagner Supply Co. v. Batemen and 12 Texas Law Review, 410, et seq. and authorities there cited.

From the foregoing it follows that the judgment of the trial court granting a judgment against Leon Thomas and M. B. Moore, jointly and severally, for the sum of $18,331 will be corrected so as to run against said Thomas, Moore and J. B. Templeton, jointly and severally, for the sum of $19,331, and as thus corrected affirmed, as is that portion of the judgment rendered in favor of said Templeton against said Thomas and Moore on certain promissory notes. It is so ordered.