BOLDING v. CAMP et al. (No. 1102-5014.)

Commission of Appeals of Texas, Section A.
May 16, 1928.

**1. Mines and minerals ⬌97—Liability as mining partner by estoppel presupposes nonpartnership.**

Creation of liability as mining partner by estoppel presupposes nonpartnership, since, if relation exists, estoppel is inapplicable.

**2. Mines and minerals ⬌97—Denial, by defendant sought to be held liable as mining partner, of existence of partnership relation left burden of proof on plaintiffs.**

In action on claim on theory that defendant and codefendants were mining partners, defendants' denial under oath of partnership relation left burden on plaintiffs of proving that issue, and they had to go further than furnishing basis for mere surmise or suspicion that partnership relation existed.

**3. Partnership ⬌29—"Partnership" depends on agreement of associates, and nomenclature or stipulation that parties are not partners is not controlling.**

"Partnership" of whatever kind rests in agreement of associates, and inter sese nomenclature or parties' stipulation that they are not to be partners is not controlling, at least as against third persons, if in truth they concur on those things which law allocates to partnership relations, but agreement resting in expressed words or implications projected by words or acts, or both, is necessary.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

**4. Mines and minerals ⬌97—Agreement under which defendant purchased one-sixteenth interest in mineral "lease" held prima facie to show existence of tenancy in common, not mining partnership; "leasehold."**

Agreement under which defendant paid specified sum in cash in return for paper evidence that he was owner of a one-sixteenth interest in a "mineral lease with a well thereon" held prima facie to show that defendant became owner of leasehold to extent of one-sixteenth thereof as tenant in common, and not as member of mining partnership; the word "lease" being used to mean "leasehold."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lease; Leasehold.]

**5. Evidence ⬌67(1)—Presumption is that relation, shown to exist, continues.**

A certain relation being shown to exist, presumption is that it continues.

**6. Mines and minerals ⬌97—Finding of mining partnership between defendants held not supported by evidence disclosed by agreed statement of facts.**

In action on claim on theory that defendant and codefendants were mining partners, evidence, as disclosed by "facts" in agreed case, held not to warrant conclusion that mining part-

nership existed between defendant and codefendants.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Actions by E. E. Camp and others against W. P. Bolding and others. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (296 S. W. 1116), and named defendant brings error. Reversed and rendered.

Goggans & Allison, of Breckenridge, and Fitzgerald & Hatchitt, of Wichita Falls, for plaintiff in error.

Kilgore, Montgomery & Carrigan, Kay, Akin & Smedley, Weeks, Morrow & Francis, E. E. Fischer, F. G. Swanson, and Davenport & Crain, all of Wichita Falls, for defendants in error.

NICKELS, J. By agreement of all parties the case made is stated as next shown:

"The sole question on this appeal is the liability of the said W. P. Bolding to the several appellees herein, and such liability, if any, rests alone upon whether or not under the proof made he was a partner with A. J. McNeece, A. L. Wylie, and his other codefendants, and, in the case of M. S. and L. I. Bennett, whether or not he was a mining partner with his said codefendants, if not a general partner; and that if such proof was insufficient, a reversal hereof should be had as to all appellees, but otherwise it should be affirmed as to all."

The relevant "facts" shown in evidence will be stated in the language of the agreement:

"(a) That in January, 1924, the appellant W. P. Bolding paid A. J. McNeece and A. L. Wylie the sum of $600 in cash, receiving in return a letter evidencing that he, Bolding, was the owner of a one-sixteenth interest in a certain 15-acre mineral lease with a well thereon. That the lease referred to in said letter was the same lease on behalf of which all of the debts sued on were incurred in drilling the second well drilled on said lease after the completion of said first well.

"(b) That at all times A. J. McNeece and A. L. Wylie alone were in active charge of the development of said lease, and alone directed and supervised all of the work and development thereon, and alone purchased the materials by reason of which the debts herein sued on were incurred.

"(c) That during the drilling of said second well on the lease in question, the appellant Bolding, on two different occasions at night, was seen on said lease and at said well. That on one such occasion, the driller in charge of said well was told by A. L. Wylie that the appellant Bolding had an interest in said well, and that he, the driller, should give Bolding any information he might call for regarding said well. That such statement made by A. L. Wylie was within hearing distance of said Bolding, but the witness would not swear that Bolding heard the statement.

"That at the time of the completion of said second well, M. S. Bennett, of the K. M. A. Fuel Oil Company, had telephone conversation

---

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

with appellant Bolding in regard to her debt against the lease in question, in which conversation Bolding was asked if he was interested in the company developing said lease, and he said that he was. When he was informed that the bills were not being paid properly, he stated that he had paid in his interest and that he did not have anything to do with the management of the lease. When informed that some money would have to be paid on the Bennett account, he stated that he would speak to Mr. Wylie [referring to A. L. Wylie] about it. Mr. Francis, representing the Bradford Supply Company, had some conversation with Mr. Bolding, in which Bolding stated to Francis that he had an interest in said lease, and that his interest was paid for, and that Wylie and McNeece should pay the account, and that he would see them about paying them.

"No plaintiff below pleaded that credit was advanced by reason of any knowledge that Bolding was interested therein, nor was there any pleading that Bolding held himself out as a partner."

The Court of Civil Appeals held there was evidence to raise the issue of partnership as against Bolding and despite his (pleaded) denial under oath and thereupon affirmed the judgment. 296 S. W. 1116. Whether such evidence exists (upon the agreed statement) is the question of law upon which writ was allowed and which may be considered here.

[1] 1. The element of "holding out" by Bolding and advancement of credit thereon is precluded by lack of averment and proof. Hence estoppel is not in the case. Randall et al. v. Merideth et al., 76 Tex. 669, 682, 13 S. W. 576; 20 R. C. L. 1067. Liability by estoppel presupposes nonpartnership, for if the relation exists estoppel is inapropos. If in the conversations between Bolding, on the one hand, and Bennett and Francis, respectively, on the other, there be a "holding out," the matter is entitled to consideration, but not as bases of estoppel.

[2] 2. Denial under oath of the partnership relation left the burden of proof upon defendants in error, and they had to go further than furnishing bases for mere surmise or suspicion that a partnership relation existed. Joske v. Irvine, 91 Tex. 574, 582, 44 S. W. 1059.

[3] 3. Partnership, of whatever kind, rests in agreement of associates. Inter sese nomenclature is of but small importance, and the fact that parties may stipulate that they are not to be partners is not controlling (against outsiders at least) if, in truth, they concur upon those things which the law allocates to partnership relations; yet agreement, resting in expressed words or implications projected by words or acts or both, is a sine qua non. Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 571, 153 S. W. 122, Ann. Cas. 1916E, 446, and cases cited. This is true of so-called "mining partnerships," as of others for ex vi necessitate a "joint working," etc., imports an agreement to that

end; expressions to the effect that "a mining partnership arises by operation of law" must be understood as presupposing "operation of law" upon facts exhibiting an expressed or implied agreement—this has many illustrations in, the criticism of the charge given the jury in Randall et al. v. Merideth et al., supra. The basic inquiry here, then, is whether there be evidence of a partnership agreement.

[4] 4. In "January, 1924," Bolding "paid" to McNeece and Wylie $600 "in cash." This is to say, he "satisfied the claims of," "compensated as for goods supplied or for services rendered," "discharged a debt or obligation by giving that which was due," or "paid the price." Century Dict. & Cyc.; Webster. He did not lend money or put it in trust or retain title in whole or part otherwise, for "payment" (unaffected by qualifying context) signifies passage of title in the medium.

"In return" he got a paper from McNeece and Wylie "evidencing that he * * * was the owner of a one-sixteenth interest in a certain 15-acre mineral lease with a well thereon." He bought and "paid" for the "one-sixteenth interest."

This, of course, imports an agreement. The evidence descriptive of the "lease" is meager. But since a well cannot be put on the paper exhibiting a contract, and since that in which Bolding acquired an interest had on it (or was to have on it) a "well," it is clear that "lease," as used, meant "leasehold" in the 15 acres. Stubbings v. Village of Evanston, 136 Ill. 37, 26 N. E. 577, 11 L. R. A. 839, 29 Am. St. Rep. 300. Whether the "leasehold" thus dealt with was a determinable fee in placed minerals (comparable to that considered in Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, and in Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601) is not shown, but all that is shown bears the inference that the "leasehold" was an interest in realty.

[5] Prima facie under the agreement thus evidenced, Bolding became (legally or equitably) an owner of the leasehold to the extent of one-sixteenth thereof. Who the other owners were is not shown, unless it be supposed that they were McNeece and Wylie. The agreement on its face is one of tenancy in common. A certain relation being shown, the presumption is that it continued. 20 R. C. L. 855; 10 R. C. L. 872. Whether the presumption be rebutted or whether in truth the original agreement included additional elements sufficient to expand tenancy in common into partnership depends upon facts and circumstances to be mentioned.

[6] (a) It is urged that sharing of profits was contemplated. The evidentiary predicate is the purchase of the "one-sixteenth interest" in the leasehold. As noted, the exact nature of the leasehold is not described.

It might well be that Bolding bought a one-sixteenth part of the minerals in place; whatever inference lies is (we think) to that end for whatever the nature of the leasehold he acquired that aliquot part of realty. If so, that which he separately owned in place he continued to own after severance and without any charge certainly in so far as severance might happen through operation of the first well, and for aught shown in so far as severance might occur through completion, etc., of subsequent wells. True it is, he might be charged, under given circumstances, with a portion of the expense of severance, but the requisite circumstances are not shown and the charge hypothetized would arise in virtue of tenancy in common, and not because of partnership.

The argument, then, assumes that which is not proved, i. e., that Bolding's one-sixteenth as and when reduced to possession, was intended to become or would become a part of partnership assets.

(b) The fact that McNeece and Wylie "alone were in active charge of the development of said lease," etc., proves nothing either way because it may have been their right (if not duty), whether partnership existed or not, to be thus in charge. Manifestly, it was their duty to be in charge in respect to the first well, and their continuation in charge is entirely consistent either with tenancy in common (for the liberty of a cotenant, e. g., Bolding, includes his right to refrain from interference) or with some arrangement (possible but undisclosed) whereby "active charge" was provided without regard for a partnership.

(c) The second well was on the tract in which Bolding had acquired an interest. His presence on the tract and at the well on two occasions proves nothing except existence of a natural curiosity.

(d) Since Bolding had an interest in the leasehold, he had a legitimate interest in any well that might be drilled on the tract and some right to information pertaining thereunto. Wylie's statement to the driller was accurate whether Bolding was a mere tenant in common or had a different position. If it be assumed that Bolding heard the statement and remained quiet, neither the statement nor his silence, nor both, tends to prove more than existence of an interest and does not indicate that the interest was other than such as was apparently acquired "in January, 1924."

(e) Bennett asked Bolding if he was "interested in the company developing said lease," and Bolding replied that "he was." He explained that his "interest" had been "paid in," and that he had nothing "to do with the management of the lease." In conversation with Francis, Bolding said that he "had an interest in said lease and that his interest

was paid for." "Interest" is a term of varied meaning, so that when the question was put by Bennett (and, inferably, by Francis) any one of many things may have been meant. But in the answers given the "interest" which was acknowledged was described as the "interest" already "paid for," and (on the record) that "interest" was the "one-sixteenth" bought "in January, 1924."

In neither conversation was Bolding charged with responsibility for the debts. His repudiation of responsibility is implied more plainly in the description given of his "interest," etc., than is a charge of responsibility implied in the words and conduct of Bennett and Francis.

Bolding's offer (to Bennett) "to speak to Wylie about it" and his offer to Francis to "see them about paying" import no admission of liability, or, in turn, of partnership.

5. In our opinion, there is in evidence no more than predicate for suspicion that a partnership may have resulted from the agreement "in January, 1924," or from some subsequent undisclosed novation or supplement. Accordingly we recommend that the judgments of the district court and Court of Civil Appeals be reversed and that judgment be rendered for plaintiff in error W. P. Bolding.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error.