A. R. RUCKS ET AL (GEORGE W. SHEFFIELD, JR.) v. TOM BURCH.

No. 7710. Decided November 12, 1941.
Rehearing overruled December 17, 1941.
(156 S. W., 2d Series, 975.)

*A. R. Rucks* and *Robt. M. Lyles*, both of Angleton, for plaintiffs in error.

The Court of Civil Appeals erred in holding that the appellants in this case were liable as partners with their codefendants in the conduct of the drilling operations on the oil, gas and mineral lease as described in plaintiff's petition in this cause. Adams v. Texhoma Oil & Refining Co., 262 S. W. 139; Ferguson v. Rhoades Drilling Co., 271 S. W. 155; 40 C. J. 1145; 18 R. C. L. 1200.

*Gilbert T. Adams,* of Beaumont, for defendant in error.

Appellants having purchased an undivided interest in the oil and gas lease and all personal property used or obtained in connection therewith, with the understanding that the purchase money was to be used to develop said lease, became partners with their vendors and are liable with them for the rental of the rig. Roberts v. McKinney, 187 S. W. 976; Wagner Supply Co. v. Bateman, 118 Texas 498, 18 S. W. (2d) 1052; Mayfield v. Key, 260 S. W. 926.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This case was finally tried in the District Court of Hardin County, Texas, with Tom Burch appearing as plaintiff and Elbert Jeans, George W. Sheffield, Jr.; A. R. Rucks, and H. E. Middleton appearing as defendants. In the district court Burch sought a money judgment against all of the above-named defendants, jointly and severally, for the sum of $3,255.00 alleged to be due him as the reasonable rental value of a certain drilling rig owned by him and used by the above-named defendants as partners in the drilling of a certain oil well in Hardin County, Texas. The defendants, Rucks and Middleton, filed answer to Burch's petition. In this answer they specifically, and in due form, denied under oath the existence of any partnership of which they were members with Jeans and Sheffield.

The case was tried in the district court, without the intervention of a jury, and judgment was rendered for Burch against Jeans and Sheffield, Rucks and Middleton, jointly and severally, for the sum of $333.00. As a basis for his judgment the trial court found that Jeans, Sheffield, Rucks, and Middleton were partners in the conduct of operations in drilling a certain well for oil on leased premises in Hardin County, Texas, and were therefore jointly and severally liable for the reasonable rental value of the drilling rig belonging to Burch and employed in the drilling operations above mentioned. The trial court found the reasonable rental value of the drilling rig to be $333.00. On appeal by Rucks and Middleton to the Court of Civil Appeals at Beaumont the judgment of the district court was affirmed. 136 S. W. (2d) 252. Rucks and Middleton applied to this Court for writ of error, and same was granted.

It is undisputed that Jeans and Sheffield were partners in drilling the well here involved. It is also undisputed that a rig owned by Burch was used in drilling such well, and that Jeans and Sheffield, as partners, were liable to Burch for the reasonable rental value of the rig in question. The sole question involved in this case is whether there is any evidence in this record to sustain a finding that Rucks and Middleton were partners with Jeans and Sheffield in the above-mentioned enterprise. On that question the facts are undisputed, leaving only a question of law to be decided.

The facts of this case show that on September 19, 1938, T. J. DeMerritt, Trustee, executed and delivered to George W. Sheffield, Jr., an oil and gas mining lease covering five acres of land out of the Stephen Jackson Survey in Hardin County, Texas, in what is generally known as the Sour Lake oil field. The lease above mentioned was what is generally termed as an "Unless" lease, and terminated according to its own terms "Unless a derrick shall have been erected upon the land herein leased and actual operations of drilling a well have been started upon said leased lands within sixty (60) days from the date hereof, * * *."

On September 22, 1938, Sheffield executed and delivered to plaintiff in error Rucks an assignment to an undivided 1/12th interest in the above-described lease, "together with all personal property recited or obtained in connection therewith." The consideration recited in this assignment is one dollar "and other good and valuable considerations." As we understand this

record, Rucks actually paid a substantial sum in money for the above assignment. The above-mentioned assignment is set out in full in the opinion of the Court of Civil Appeals. In the interest of brevity we refer to that opinion for its full terms.

On the 22nd day of September, 1938, Sheffield executed and delivered to plaintiff in error Middleton an assignment to an undivided 1/16th interest in the above-described lease. Except as to the interest assigned, the assignment to Middleton is in all respects the same in its wording as the assignment to Rucks. Also, Middleton actually paid a substantial sum in cash for his assignment:

It appears that when Sheffield made his assignment to Rucks and also to Middleton, he told each of them he was going to drill a well on the leased premises and had finances of his own, but not enough to drill a well, and that he wanted to sell an interest in the lease to complete the financing of the drilling. There is absolutely no evidence that either Rucks or Middleton were to participate in the drilling operation. The written assignment is absolute in form and makes no provision that the consideration paid therefor shall be used in drilling operations. Furthermore, such assignments obligate neither Rucks nor Middleton to do any drilling on the leased premises. It is conclusive that neither Rucks nor Middleton took any actual part in the drilling operations. They were conducted entirely by Jeans and Sheffield. Also, it appears that neither Rucks nor Middleton took any part in leasing this drilling rig from Burch. It does appear that Sheffield took Jeans in as a partner and the two were, and are, liable to Burch for the rental value of this rig.

In this case, under the above record, we are confronted with this simple question: "Did Rucks and Middleton constitute themselves partners with Jeans and Sheffield by respectively merely taking an assignment to an undivided fractional interest in the above lease and of the personal property used in connection therewith, under the circumstances above detailed? We think that to ask this question is but to answer it in the negative.

██ It is settled as a law of this State that in order to constitute a mining partnership arising by operation of law there must not be only joint interest in the mining property but joint operation thereof as well. Joint ownership without joint operation merely constitute cotenancy. To constitute a mining

partnership it is essential that there be an actual working of the mine by the partnership. 29 Tex. Jur., p. 698, sec. 32; Gardner v. Wesner (Civ. App., writ refused), 55 S. W. (2d) 1104; Boling v. Camp (Com. App.), 6 S. W. (2d) 94; Lowry Oil Corp. v. Bennett (Civ. App.), 16 S. W. (2d) Munsey v. Mills & Garrity (Com. App. opinion adopted), 115 Texas 469, 283 S. W. 754; Wesner v. Brenden (Civ. App., writ dismissed), 94 S. W. (2d) 239; Cox v. Bond (Civ. App.), 91 S. W. (2d) 479; 40 C. J. 1145; 18 R. C. L. 1200; Thornton's Oil & Gas (5th ed.), secs. 658-667; Summers Oil & Gas, sec. 235.

■ Tested by the above rule the facts of this case are utterly insufficient to show a mining partnership between Jeans and Sheffield and Rucks and Middleton. At best, Rucks and Middleton became mere cotenants with the other co-owners of the lease. Rucks and Middleton had nothing to do with the operation of this lease or in the drilling of this well. It follows that one of the essential elements of a mining partnership created by operation of law was lacking. When Rucks and Middleton paid Sheffield for the respective interests purchased by them in this lease, the money paid became the property of Jeans and Sheffield. In this connection, if it be conceded that Jeans and Sheffield were to use such money to drill this well, still any profit would have belonged to Jeans and Sheffield, and neither Rucks nor Middleton would have had any interest therein.

The Court of Civil Appeals cites as its sole authority for holding that the facts of this case constitute Rucks and Middleton mining partners with Jeans and Sheffield the case of Wagner Supply Co. v. Bateman, 118 Texas 498, 18 S. W. (2d) 1052. To our minds that case fully supports the rule we have announced. We quote the following from that opinion by the late Chief Justice Cureton:

"There is present here not only a joint ownership of the lease by Bateman and Roberts and his associates, but joint operation, sharing of profits, community of interests, and the mutual agency of Roberts representing the partnership in the management of the lease and exploration for oil. It is unnecessary to discuss the various technical tests of whether or not a partnership exists. *The rule is that a mining partnership arises by operation of the law where co-owners work a mine.* * * *" (Emphasis ours.)

The judgments of the Court of Civil Appeals and district court against Rucks and Middleton are both reversed, and

judgment is here rendered in their favor. The judgment against Jeans and Sheffield was not appealed from, and is not here disturbed.

Opinion delivered November 12, 1941.

Rehearing overruled December 17, 1941.