U. S. TRUCK LINES, Appellant,

v.

TEXACO, INC., Appellee.

No. 3540.

Court of Civil Appeals of Texas.

Eastland.

June 17, 1960.

Rehearing Denied Aug. 5, 1960.

Kirchheimer & Kirchheimer, Houston, for appellant.

Jack D. Childers, Al Crystal, Houston, for appellee.

GRISSOM, Chief Justice.

U. S. Truck Lines sued Merrill Richardson, Inc., and Texaco, Inc., for rent on a board road. In a trial to the court, judgment was rendered for the plaintiff against Richardson, Inc., but judgment was rendered for Texaco, Inc. From that part of the judgment denying recovery against Texaco, U. S. Truck Lines has appealed.

Appellant's points are to the effect that the court erred in failing to hold that Richardson, Inc., and Texaco, Inc., were jointly liable because they were mining partners and that their partnership was established by their written operating agreements and the manner in which they operated leases. Findings of fact and conclusions of law were not requested by appellant and not filed, therefore, if issues of fact were raised the evidence must be viewed in the light most favorable to Texaco, and all facts necessary to support the judgment must be presumed to have been found in favor of Texaco, provided the evidence will support such findings. However, appellant's contention is that, as a

matter of law, the written agreements between Texaco and Richardson, Inc., and the manner of developing the lease show that they were mining partners and, therefore, jointly liable for appellant's debt which was contracted only by Richardson, Inc.

In February, 1958, Merrill I. Richardson owned an oil and gas lease on lot 11 of a certain subdivision and Texaco owned a lease on the adjoining lot 10 and, for the purpose of developing said leases, each assigned to the other a one-half interest. Richardson and Texaco entered into an operating agreement for drilling wells and developing said leases. Merrill I. Richardson was appointed operator. He was given exclusive charge, management and control of all development. The operating agreement provided that Richardson should secure and furnish all material, labor and services necessary for development and operation of said leases; that said operator should pay currently, as incurred, all expenses arising out of operations under said agreement; that the rights and liabilities of said parties should be several, not joint, and that each should be responsible only for its own obligations as stated in said agreement. It recited that it was not the purpose or intention of the parties that said agreement should create, or be construed as creating, a partnership and that it was agreed that said contract should not constitute a partnership as defined in the Internal Revenue Code, 26 U.S.C.A. § 7701. It provided that said operator should keep proper accounts showing an accurate record of all expenses incurred by him and that statements for payment made by operator should be rendered to Texaco on the last day of each month for its half of the operator's expenditures during the preceding month but that the operator might require Texaco to pay in advance its proportionate share of a certain anticipated cash expenditure by furnishing an estimate thereof. It provided that gross production, severance and other taxes should be reported and paid by each party on its interest; that any minerals produced under said agreement should be owned by and allocated to the parties according to their respective ownership of the two leases; that each should take in kind, or separately dispose of, its share of production. It provided that either party might assign its interest in said contract and leases. Texaco denied under oath appellant's allegation that it was engaged with Richardson, Inc., in a mining partnership or a joint venture. The contract for building the board road to the well site was made by the president of appellant and Richardson. Richardson, Inc., succeeded to the rights and duties of Merrill Richardson and the transfer by the individual to the corporation need not be further noticed. According to appellant's president, he made a trip to the well site and agreed on terms for furnishing the board road with Richardson, agreed to build the road for Richardson and carried the account as "M. I. Richardson, Inc." He dealt only with Richardson. Texaco did not participate in any of the negotiations, or agreements, between Richardson and appellant for building the road. Appellant never contacted Texaco about building the road. On May 13, 1958, appellant's president wrote M. I. Richardson about "your" account. Appellant's president testified that he was satisfied to negotiate his agreement solely with Richardson and decided not to contact Texaco to see whether it would be responsible for payment.

The written operating agreement between Richardson and Texaco did not authorize Richardson or Richardson, Inc., to obtain material or labor on Texaco's credit. The contract provided that the operator Richardson, "shall pay currently as incurred all costs and expenses arising out of operations under this agreement * * *." It provided that the liabilities of the parties should be several, not joint, and that each should be responsible only for its obligations, "as stated in this agreement", and that it was not the intention of the parties to create a partnership. It contained this further significant provision: "It

is not the intention of the parties * * * that this contract is made for or is intended for the benefit of any third person". Under the contract Texaco's obligation was only to pay to Richardson, Inc., one-half of the cost of development. Richardson, Inc., had the power to require Texaco to make payments to it in advance. It expressly precluded the operator from contracting for Texaco, or obtaining material or labor on Texaco's credit. Neither the written contract between Richardson, Inc., and Texaco, Inc., nor the manner of carrying out said contract show as a matter of law that they were mining partners or joint venturers. The written contract stresses the fact that it was not their intention to enter into a partnership. Appellant neither alleged nor introduced any evidence to prove that Texaco did or said anything to lead it to believe Texaco would pay this bill. The evidence merely establishes a cotenancy in the ownership of the well. It certainly is not conclusively established that they became partners. They agreed only to carry on mining operations on their land, each contributing toward the expenses in proportion to its respective interest in the leases.

"Persons who are not partners as between themselves will not be held [to be] partners as to third persons in the absence of some element creating a partnership by estoppel or holding out. * * * Hence, according to the generally accepted rule, where no question of estoppel is involved, persons cannot be held to be partners as to third persons in the absence of, or in disregard of, their intent as to the formation of the relation, and whether the legal effect of the contract is to create a partnership is to be determined by the intention of the contracting parties." 68 C.J.S. Partnership §§ 22, 24, pp. 442, 443.

"While it has been held that owners as tenants in common of a mining claim, and engaged in working it, are partners, or quasi partners, the more general rule is that by the mere force of cotenancy in the ownership of mines, a partnership does not arise. Cotenants may become partners if they agree to assume that relation toward each other; but the law does not create that relation for them as the consequence of a course of conduct and dealing naturally referable to a relation already existing between them, making such a course of conduct to their common advantage. Where they merely agree to carry on mining or other operations on their lands, each contributing toward the expenses in proportion to his respective interest or estate in the land, they are considered, with respect to both themselves and third persons, as the ordinary owners of land working their respective shares, responsible only for their own acts and, therefore, not subject to the ordinary laws of partnership." 36 Am.Jur. 398, 399.

In Wagner Supply Company v. Bateman, 118 Tex. 498, 18 S.W.2d 1052, the elements necessary to establish a mining partnership were held to be: (1) joint ownership, (2) joint operation, (3) mutual agency, (4) community of interest and (5) sharing of profits. Joint operation and mutual agency were not established in the instant case. In Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 722, under a similar operating agreement, it was held that the parties were not partners. The court said that a contract between owners of an oil and gas lease providing for payment of the expenses of development out of the proceeds of oil before division of profits, but not obligating non-operating owner for any of the expenses, nor authorizing either to create liabilities to third parties binding on the other, negatived an intention to create a partnership relation. In McAdams v. Commissioner of Internal Revenue, 5 Cir., 198 F.2d 54, 57, the court said it was well settled in Texas that

cotenants might become partners if they agreed to assume that relationship, but that the law did not create that relation for them as a consequence of a course of conduct naturally referable to the relation of cotenancy already existing between them, making such a course of conduct to their common advantage. Appellant cites, among others, Templeton v. Wolberton, 142 Tex. 422, 179 S.W.2d 252, 254. In both the Templeton and Luling cases it was held that a partnership did not exist where there was joint ownership of the leases and the leasehold premises were drilled and operated by one owner pursuant to a similar operating agreement. In the Luling case the court said (191 S.W.2d at page 722):

"Joint owners of an oil and gas lease may, without forming a partnership, contract for the operation of the lease by one of them and for the operator in the event of success to pay to the other joint owner one-half of the proceeds of the sale of the oil and gas less the expense of finding it, without creating a joint adventure or a mining partnership."

Our Supreme Court stressed the fact that the lease was to be operated by one of the owners exclusively and that the operating agreement did not authorize the operator to create any liability to third parties binding on the non-operator. Joint operation is an essential element of a mining partnership. In the Templeton case our Supreme Court, under a situation similar in its essentials to the instant case, held that, although Templeton was a joint owner of the lease, advanced money to pay for the drilling and counseled his co-owners relative to development, he was not liable, as a matter of law, for the debt to the driller under his co-owner's contract with the driller, because said facts, actual participation by Templeton in the development being absent, were insufficient to show a mining partnership. Such a partnership is not established by proof of counseling, presence

at the well, interest in the result of the drilling and knowledge of the existence of such a contract as the one here sued on. In the Templeton case our Supreme Court said [142 Tex. 422, 179 S.W.2d 255]:

"Templeton's agreement to counsel Thomas and Moore denotes neither the existence of a partnership relation nor an intention to enter into that relation."

In Rucks v. Burch, 138 Tex. 79, 156 S.W. 2d 975, 976, our Supreme Court said:

"It is settled * * * that in order to constitute a mining partnership arising by operation of law there must not be only joint interest in the mining property but joint operation thereof as well. Joint ownership without joint operation merely constitutes cotenancy. To constitute a mining partnership it is essential that there be an actual working of the mine by the partnership."

■ The agreement depended upon by appellant to hold the non-operator, Texaco, liable for the debt contracted by Richardson negatives any intention to create a partnership. The contract did not authorize Richardson to create any liability to third parties binding on Texaco. Richardson had no authority to obtain credit on Texaco's account. Texaco's obligation was only to pay the operator one-half its cost. There is no contention that there exists any element of estoppel that would prevent Texaco from denying partnership. There was no sharing of profits between Richardson, Inc., and Texaco. The contract expressly provided that each should have the right to take its share of the minerals produced in kind and to use and market it as it saw fit. We conclude that a mining partnership, or joint venture, was not established and that the court correctly rendered judgment for Texaco.

The judgment is affirmed.