**Mary Jane HAMILTON, Appellant,**

v.

**M. W. HAMILTON et al., Appellees.**

**No. 11018.**

Court of Civil Appeals of Texas.

Austin.

Jan. 9, 1963.

Rehearing Denied Jan. 30, 1963.

Cofer & Cofer, Austin, for appellant.

F. L. Kuykendall, Austin, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment denying appellant any recovery against J. H. Stelfox.

The appellant as plaintiff alleged that she loaned $24,000.00 in August and September, 1958 to M. W. Hamilton and J. H. Stelfox, who were alleged to be engaged in a partnership and joint venture in the Republic of Mexico, and that the money had not been repaid.

Plaintiff sought recovery for a further sum of $7000.00 for money loaned to defendants, who were engaged in a partnership and joint venture under the name Stelham Production, Inc.

Recovery was sought for other money loaned by appellant, but such is not involved in this appeal.

Judgment was awarded plaintiff against Hamilton for $74,963.98 and no appeal has been perfected and the judgment is final.

Trial was had with the aid of a jury and in reply to issues submitted the jury found that Hamilton and Stelfox were engaged in a joint venture. In answer to Special Issue No. 2 the jury found that Hamilton was not authorized by express agreement between Stelfox and Hamilton to borrow money from plaintiff for their joint venture in Mexico.

The jury found that plaintiff loaned to defendants the sum of $21,000.00.

Based on the answer of the jury to Issue No. 2 that Hamilton was not authorized by prior express agreement to borrow money, the Court denied any recovery against Stelfox.

The appeal is based on three points and are:

"I.

"The District Court erred in holding that unless there was a prior, express agreement between defendants to borrow money from plaintiff, defendant Stelfox was not liable for the repayment of money loaned to defendants Stelfox and M. W. Hamilton for their joint venture in Mexico.

"II.

"The District Court erred in refusing to submit to the jury plaintiff's Requested Special Issues No. 1, 2 and 3 with reference to plaintiff's cause of action for money loaned to a joint venture of the defendants conducted under the name of Stelham Production Inc.

"III.

"The District Court erred in refusing to submit to the jury plaintiff's Requested Special Issues No. 4, 5 and 6 with reference to plaintiff's cause of action for money loaned to defendants for the purchase of a Cessna airplane."

All transactions and events involved in this case occurred in 1958 and prior to October 18, 1958, on which date plaintiff, Mary Jane Brickman was married to M. W. Hamilton.

Large sums of money were transferred by plaintiff from accounts in New York to Austin, Texas, but since we are concerned only in this appeal with items aggregating $28,000.00, we see no occasion to discuss such transfers. It is made to appear that on August 20, 1958 plaintiff deposited $18,905.97 in an Austin bank and on September 5, 1958 she deposited an additional $8000.00, both of such amounts were deposited in the Austin National Bank in the M. W. Hamilton Operating Account.

There can be no question but that $21,000.00 was delivered to Stelfox by Hamilton and a large part, if not all, was for the Mexico project.

There was testimony that Hamilton was to be a silent partner with Stelfox in the Mexico project. Stelfox testified that all of the money he received was for the purchase of a half interest in seventeen shares that Stelfox owned in a partnership of Riddle and Hill and eight and one-half shares were issued to Hamilton.

The prime question to be determined is the correctness of the holding by the Trial Court in the submission of Special Issue No. 2, and the answer thereto, as follows:

"Do you find from a preponderance of the evidence that Merton W. Hamilton was authorized by prior express agreement between defendants Stelfox and Hamilton to borrow money from plaintiff for their joint venture in Mexico, if you have found such a joint venture?

"Answer 'Yes' or 'No.'

"Answer: No."

Based on this answer of the jury the Court decreed that the plaintiff take nothing against Stelfox. We believe the Court was justified by law and the facts, and affirm the judgment.

The appellant knew that Hamilton was buying one-half of Stelfox's interest in the Mexico project, her testimony in part, is as follows:

"Q Well, 'Dude' Stelfox never said anything to you about making a loan to him, did he?

"A No.

"Q And you weren't relying on anything that 'Dude' Stelfox might have represented to you about the loan?

"A No.

"Q Now, I will ask you if it isn't a fact that you loaned the money to Merton W. Hamilton so that he could make a financial settlement with his former wife?

"A Yes.

"Q He represented to you, and you made loans to him on his faith and his credit alone?

"A (Nods.)

"Q And did he tell you that he wanted to get some money from you so that he could complete the drilling of some wells down in Liberty County?

"A No; no, I don't think so. He told me he was completing them, but he didn't tell me he wanted money from me for that.

"Q He didn't tell you he wanted money from you to complete those wells?

"A No.

"Q You never at any time, did you, Mrs. Hamilton, make any loans or advance any monies to M. W. Hamilton at the request or suggestion of 'Dude' Stelfox, did you?

"A No.

"Q Now, you knew that Mert was buying a half—half of Stelfox's interest in this Mexican enterprise, didn't you?

"A Yes.

"Q Mert told you that, didn't he?

"A Yes.

"Q And he told you it would take $30,000 to buy the one-half interest?

"A There was a discussion about $30,000, I know.

\*  \*  \*  \*  \*  \*

"Q Well, you never—you were around Mr. Stelfox from time to time after the money was advanced, were you not?

"A Yes.

"Q And you never did discuss with Mr. Stelfox anything about the details of his agreement with Mert, did you?

"A No, I don't believe so.

"Q Now, if this venture in Mexico had been a profitable venture, you and Mert expected to get one-half the profits, didn't you?

"A Well, Mert would have gotten them, and I would have gotten them, being his wife, yes.

"Q Well, at that time you were not married, were you? At the time you were—

"A No.

"Q You didn't marry him until October 18, 1958, so that if it had been a profitable venture, then you and Mert would have gotten half of what Mr. Stelfox got out of it, under his agreement?

"A Well—

"Q That is correct?

"A —as far as I know."

Stelfox testified, in part:

"Q What was the agreement you had with Mert regarding the Mexico project?

"A I told Mert if—I asked him if he would like to go in on the Mexico project. He said, 'Well, let me think about it.' So he thought about it, and the next day he said that he thought maybe he could if he could get the money, and he asked how much would it cost. I told him I would let him have half of my stock for $30,-000.

"Q All right.

"A So he agreed to take it, and I said, 'Well, you don't have to pay it all at one time. You have to pay it as they outlined it to me that I had to pay it, and make it easy.' He said, 'Well, in that case I will go.'

"Q All right. Was any discussion had between you as to whether or not it was going to be a partnership, or just what was he to have?

"A Well, would be a partnership—half of the stock would not be a partnership; I mean I had 17 shares—17 per cent of the total hundred per cent of the stock, which he would get 8½ per cent of the stock."

■ We do not believe that the pipe line clearing project in Mexico was a joint venture, or a trading venture or business. The interest of Hamilton and Stelfox was that of stockholders in the Mexico corporation.

Hamilton had nothing to do with the operation of the enterprise, and Stelfox was on the job a few times.

There was no active management in either Hamilton or Stelfox, and there was no continuous purchasing and selling. Randall et al. v. Meredith et al., 76 Tex. 669, 13 S.W. 576; Miller v. White et al., Tex.Civ.App., 112 S.W.2d 487, er. dism.; Rucks et al. v. Burch, 138 Tex. 79, 156 S.W.2d 975; First State Bank of Riesel v. Dyer et al., 151 Tex. 650, 254 S.W.2d 92. The Mexico project ceased to be active in November, 1958 and no dividends have been paid.

Since we are affirming the judgment of the Trial Court it is unnecessary to pass on or consider the counterpoints of appellees.

■ We do not believe that the Court erred in refusing to submit plaintiff's Special Issues concerning money loaned to Stelham Production, Inc., since even so the officers and stockholders would not be personally liable.

■ The Court did not err in refusing to submit plaintiff's requested Special Is-

sues 4, 5 and 6 with reference to an asserted cause of action for money loaned to the defendants for the purchase of an airplane.

There was no evidence that Hamilton and Stelfox became joint owners of the airplane.

Hamilton told Stelfox that they owned an airplane. The airplane was registered in Hamilton's name only. The money paid on the airplane purchase came from the M. W. Hamilton Operating Account, and he, alone had the right to check on such account.

The judgment of the Trial Court is affirmed.

Affirmed.

PHILLIPS, J., not sitting.