**MISCO–UNITED SUPPLY, INC.,**
**Plaintiff-Appellant,**

v.

**The PETROLEUM CORPORATION et al.,**
**Defendants-Appellees.**

**No. 71–2908.**

United States Court of Appeals,
Fifth Circuit.

June 7, 1972.

---

J. P. Jones, John A. MacKintosh, Jr., William M. Blackburn, Jr., Dallas, Tex., for plaintiff-appellant; Thompson, Knight, Simmons & Bullion, Dallas, Tex., of counsel.

D. L. Case, Jack Pew, Jr., Dallas, Tex., for Petroleum Corp., Wm. C. Moss and J. Howard Marshall; Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., of counsel.

Leo J. Hoffman, Mark Martin, Dallas, Tex., for John Hill, J. Curtiss Brown, Wilburn W. Watkins; Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., of counsel.

Ross N. Sterling, Houston, Tex., for E. M. Smith.

E. N. Bender, Houston, Tex., for C. J. Pinner.

Before RIVES, BELL and MORGAN, Circuit Judges.

BELL, Circuit Judge:

This appeal is from the judgment entered in a diversity suit brought to recover the purchase price of oil well construction supplies. The supplies were sold by Misco-United Supply Company (Misco) to the account of C. J. Pinner, and delivered for use at the Youngblood and Persons wells in Upshur County, Texas.

Misco brought suit against Pinner, other individuals and one corporation on the theory that, as Misco subsequently discovered, they had varying investments in and contractual obligations with respect to the Youngblood and Persons wells. At the trial, Pinner confessed liability. Thereafter, in response to special interrogatories, the jury found that none of the remaining defendants intended to be joint venturers in the Youngblood well and that only the corporation, The Petroleum Corporation (Petco), intended to be a joint venturer in the Persons well. The jury also found that Misco delivered no supplies to the Persons well prior to the time Petco withdrew from participation in that well, this date being February 25, 1969. Judgment was then entered by the court against Pinner for the principal sum of $141,716.61 together with interest. Judgment was entered that Misco take nothing from the other defendants. It is from the judgment of non-liability as to the corporation and five of the individual defendants that Misco appeals.

Misco assigns seventeen points of error. These assignments relate in one way or another to the sufficiency of the evidence, evidentiary rulings by the court, and the court's charge to the jury or failure to give requested charges. We find these assignments to be without merit and affirm.

I.

Misco bases its claim against Petco and the individual defendants Moss and Marshall, officers of Petco who personally guaranteed Petco's obligations, on a letter agreement and a subsequent written modification. The letter agreement was signed on November 7, 1968. Through this agreement and various appendices attached thereto, Pinner and Petco agreed to drill a test well in the Gilmer area of Upshur County, and another test well in the Grice area. Pinner was to conduct the drilling on land where Pinner owned oil and gas leases. If either of these wells was successful, the agreement provided the opportunity for developing additional wells. The Persons well was a test well. Youngblood was a development well.

The critical parts of this agreement in terms of Misco's claims are those dealing with the participants' liabilities for the costs and expenses of the wells. Misco argues that the agreement clearly specifies that Petco and Pinner would be "joint venturers" which under Texas law would make the parties

jointly liable for the debts of the venture.[1]

Misco also contends that the Operating Agreements which were part of the appendices attached to the main agreement were inoperative because they were never signed, and because the main agreement referred to these documents as operating agreements which shall hereafter be entered into. Alternatively, Misco contends that if the Operating Agreements were effectively part of the agreement, favorable inferences can be drawn from the fact that the parties struck the form language "The liability of the parties shall be several . . ." and substituted the language *"As between the parties*, the liability of the parties shall be several, not joint and collective, and each party shall be responsible only for . . . its proportionate share of the costs . . ." (emphasis supplied) Also stricken from the form was a clause declaring that the parties did not intend to be partners or liable as partners.

Petco, on the other hand, seeks refuge in those parts of the agreement which limit the rights of the parties to "act for or bind the other as to any matter except strictly in accordance with the terms and provisions of the Joint Operating Agreement(s)" which, as previously noted, were attached to the main agreement. Petco also stresses those provisions in the agreement which required Pinner to give notice of 60 days and evidence of good and marketable title before drilling a development well.

The remaining contractual document between Petco and Pinner is a contract modification dated July 23, 1969. This modification related only to the Youngblood well where drilling had been commenced on March 3, 1969. By this modification, Petco agreed to pay $82,200 or 27.4 per cent of the agreed cost of drilling the well to a given depth. The mod-ification further reserved the right to Petco to deny liability to third parties for any costs even though the same may have been paid by Petco. More importantly the modification ended with a statement that the agreement of November 7, 1968, remained in effect except where expressly altered by the modifying agreement.

Misco's claims against individual defendants Hill, Brown, and Watkins are based on letter agreements whereby these defendants agreed to participate with Pinner in the Youngblood and Persons wells. Misco relies on language in the agreement where the parties stated that they associated themselves "as joint venturers under the terms of this agreement and the Joint Operating Agreement hereafter entered into (Appendix III)." On the other hand, these defendants rely on those parts of the agreement which stated that they were participating in the Persons well on a "turn key" basis, i. e., when the well was completed, each of these defendants would pay Pinner a predetermined sum for a two per cent interest in the well (five per cent for defendant Hill). As to the Youngblood well, the agreement provided for the sharing of costs, expenses and profits in proportion to their respective interests, two per cent for Brown and Watkins and five per cent for Hill.

On the trial, it was established that at the time of the deliveries to Pinner, and for nine months thereafter, Misco had no knowledge of any other participants in the wells covered by the suit. The letter by which Pinner opened a line of credit with Misco was signed by Pinner alone and only on behalf of C. J. Pinner Company. No mention was made of other associates or venturers.

In regard to the Youngblood well, Mr. Moss, the president of Petco, testified that Pinner began drilling without waiting the required 60 days and that Pin-

---

1. Under Texas law, a joint venture is "in the nature of a partnership", but is limited to a particular transaction, whereas a partnership is usually formed for a continuing general business. See Brown v. Cole, 1956, 155 Tex. 624, 291 S.W.2d 704, 709 ; Colonial Refrigerated Transportation, Inc. v. Mitchell, 5 Cir., 1968, 403 F. 2d 541, 546.

ner never delivered evidence of good and marketable title to the well site. Moss explained the modification of July 23, 1969, as being in settlement of a dispute between Petco and Pinner over the Youngblood well contract. According to Moss, the modification provided that Petco would purchase an interest in the Youngblood well only if Pinner could deliver good title to the well site. As stated, this was never delivered. Thus, as it turned out, Petco paid none of the Youngblood well costs. The transaction simply failed for want of title.

As to the Persons well, total depth was reached on February 24, 1969, thus giving Petco an option not to participate further in that well. Petco elected on February 25, 1969 not to participate further. Petco paid no expenses incurred after that date and never shared in any profits from the well. There is substantial evidence that Misco delivered no supplies to the Persons well until after such time as Petco had withdrawn from participation in the well.

As to defendants Brown, Watkins, and Hill, the evidence showed that they exercised no control or supervision over the work at the well sites. Their role was simply that of investors. There was considerable testimony that these defendants intended to participate in the wells only to the extent of their two per cent and five per cent investments.

## II.

We deal first with those assignments of error wherein Misco contends that the evidence was of such weight that it was due a directed verdict as a matter of law. At the trial Misco advanced this theory through motions for instructed verdicts, motions for judgment notwithstanding the verdict, and motions for a new trial or altered judgment.

█ As this is a diversity case, Texas law is controlling on the question of the formation of a joint venture and the liability of the participants. The sufficiency of the evidence, however, is a federal question. Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 368.

██ If a joint venture exists under Texas law, one joint venturer has the authority to bind other joint venturers by contracts made in furtherance of the joint enterprise. Burton-Lingo Company v. Federal Glass & Paint Company, Tex.Civ.App., 1932, 54 S.W.2d 170; Mitchell v. City National Bank of Wichita Falls, Tex.Civ.App., 1929, 14 S.W.2d 909. Misco's case is dependent on the establishment of a joint venture among Pinner and the defendants or some of them. If the joint venture is established, the venturers would then be jointly liable for the cost of the goods sold to Pinner. If the defendants were merely owners of an interest in realty, or owners who have contracted for the operation of a lease by another, they would not be liable for the contracts of the operator or drilling contractor. A joint venture or mining partnership would not be created. The non-operators would have only a contractual liability to the operator predicated upon the terms of the operating agreement, and not to third persons. Luling Oil & Gas Company v. Humble Oil & Refining Company, 1945, 144 Tex. 475, 191 S.W.2d 716; Rucks v. Burch, 1941, 138 Tex. 79, 156 S.W.2d 975; Lee Jones, Jr., "Problems Presented by Joint Ownership of Oil, Gas and Other Minerals," 32 Texas Law Review, 697 (1954). Furthermore, and as appellant concedes, whether a particular agreement constitutes a joint venture depends upon the intentions of the parties thereto. Luling Oil & Gas Company v. Humble Oil & Refining Company, supra; Colonial Refrigerated Transportation, Inc. v. Mitchell, supra.

The matter of disagreement, however, is whether in the present case the question of intent should have been presented to the jury. We have said:

"Whether or not a group of persons constitute a joint venture is usually a question of fact, to be resolved by the jury."

Colonial Refrigerated Transportation, Inc. v. Mitchell, supra, 403 F.2d at 547.

■ Opposing inferences from contractual provisions as to the intentions of the parties regarding the creation of a joint venture will ordinarily give rise to a question of fact. Whether such opposing inferences exist in the first place is a question of law. Cf. St. Paul Mercury Insurance Company v. Price, 5 Cir., 1966, 359 F.2d 74, 76. Here the contracts were of great length and were complex. Conflicting descriptions and definitions were used to describe the relationship of the parties. The language defining the liabilities of the parties and the conditions precedent to liability were open to more than one interpretation. Which parts of the agreement were to be in effect at a given time is not by any means clear. The conflicting inferences are apparent with respect to the joint venture liability asserted against the defendants. The district court did not err in allowing evidence as to the intention of the parties.

■ With respect to Petco, there was ample evidence of record to support the submission to the jury of the question of intent to enter into a joint venture with Pinner in the Youngblood well and to support the jury's finding. For example, we have previously noted the evidence which supports the position that Petco's obligations as to the Youngblood well were contingent upon Pinner's performance with respect to notice and title. Contrary to Misco's argument, it is a matter of substantive law in Texas that conditions precedent had to be met before a joint venture was created. "[Where] an agreement is made for a future partnership, but the partnership is to go into effect only after stipulated things are done, no partnership exists until the conditions are fulfilled." Shell Petroleum Corporation v. Caudle, 5 Cir., 1933, 63 F.2d 296, 297.

As to Petco's participation in the Persons well, the matter is posed in a different context. The jury found that Petco did intend to participate in this well as a joint venturer. However, the jury also found that Misco delivered no equipment prior to noon February 25, 1969. Upon consideration of Petco's letter to Pinner, delivered prior to noon on February 25, 1969, by which Petco declined to participate further in the Persons well, the court entered judgment for Petco.

■ Misco challenges the effectiveness of Petco's withdrawal, contending that its liability could not be limited without first giving notice to third parties. While we agree with the proposition that a private agreement between partners will not limit their liability to third parties, we deem this rule to be inapposite on the present facts. Petco's right to withdraw from further participation in the Persons well was specifically provided for in the written agreement of the parties. Reliance by a third party, the *sine quo non* of the rule, is totally absent here. Cf. Walker v. Brown, 1886, 66 Tex. 556, 1 S.W. 797; Wallis v. Wood, Tex.Sup.Ct., 1888, 7 S.W. 852; Altgelt v. D. Sullivan & Co., Tex.Civ. App., 1903, 79 S.W. 333; Brewer v. Big Lake State Bank, Tex.Civ.App., 1964, 378 S.W.2d 948. Misco never, in any way prior to delivering the supplies, had knowledge of the participation in the well of any person other than Pinner. Under these circumstances, the district court was correct in giving effect to Petco's withdrawal.

■ As to defendants Hill, Watkins, and Brown, we have already discussed the propriety of submitting their contracts and other evidence of intent to enter into a joint venture to the jury. The evidence in their favor was substantial. Not only did the contracts specifically state that liability was several, considerable testimony was offered to substantiate the claim that their interests were limited to levels of two per cent and five per cent. These limitations are directly opposed to Misco's claim that these defendants had entered the venture with joint liability for costs and expenses. In sum, there was more than

ample evidence to warrant submission of the question of their intent to be joint venturers to the jury and to support the resulting verdict.

### III.

■ The errors assigned which relate to evidentiary rulings are without merit. The claimed errors which pertain to the charge or the failure to charge are also without merit. The use and form of special interrogatories are matters addressed to the sound discretion of the district court. Abernathy v. Southern Pacific Company, 5 Cir., 1970, 426 F.2d 512; New Orleans & Northeastern Railroad Company v. Anderson, 5 Cir., 1961, 293 F.2d 97. There was no abuse of that discretion.

### IV.

■ Finally Misco contends that the court erred in not instructing the jury with respect to the existence of a mining partnership in the Youngblood well between defendants Brown, Watkins, and Hill and Pinner. It is Misco's argument that a fact issue on this point was at least raised because it is possible to infer that the contract between Pinner and these defendants was never executed in regard to the Youngblood well. Absent an effective contract to negate such a result, Misco argues that it is possible to further infer the existence of all of the elements of a mining partnership as set out in Wagner Supply Company v. Bateman, 1929, 118 Tex. 498, 18 S.W.2d 1052: Joint ownership, joint operation, profit sharing, community of interest, and mutual agency of one of the partners or an employee in managing the field. While it is highly unlikely that Misco's initial premise regarding the absence of a contract to cover the participation of these defendants in the Youngblood well is valid, the assignment of error may be disposed of on another ground. The record simply does not contain enough evidence of joint opera-

tion on the part of Hill, Brown, or Watkins to take the question to the jury. What the record does reflect is that Pinner had complete control of the drilling operation and that the other defendants were merely investors. Joint ownership alone without joint operation creates only a cotenancy. A mining partnership requires an actual working of the mine by the partnership. Rucks v. Burch, 1941, 138 Tex. 79, 156 S.W.2d 975.

The assignments of error not specifically discussed herein have been considered and also found to be without merit.

Affirmed.